LEAR, Judge.
There is, in Lafayette, Louisiana, a subdivision known as West End Heights. As originally laid out, the property was subdivided into lots measuring 25 feet on the front, between parallel lines of 125 feet.
Lot 14 of said subdivision is situated on the northeast corner of the intersection of West University Avenue and Louise Street. Adjacent thereto, running to the north, are Lots 13, 12 and 11, in that order.
Prior to the occurrences leading up to the present litigation, all of these lots were owned by one Mr. John B. Levy, the common ancestor in title to all parties litigant.
On January 20, 1964, Mr. Levy leased to James H. and George E. Desser, defendants herein
“That certain building, measuring fifty feet by thirty feet (50' x 30'), together with other on site improvements to be constructed in connection therewith and which are pertinent to the use and occupancy of the said building, which building shall be constructed on all or part of that certain lot of ground known and described as Lot 13 of Block 2 of the West End Heights Subdivision * * * ”
Though this description only refers to Lot 13, it is obvious that the parties intended to include, in addition, all or part of either Lot 14 or Lot 12 because of the obvious fact that a thirty-foot building cannot be placed on a 25-foot lot.
As a matter of fact, the building was built fronting on West University Avenue, across both Lots 13 and 14, being fifty feet wide and thirty feet deep. All parties to this lease have evidently treated the lease as encompassing both lots and this is not an issue before the court. It was felt, however, that this discrepancy should be explained for a thorough understanding of the entire matter.
The lease further provided that it should commence “ * * * when the building and parking lot to be erected as aforesaid will have been completed and both lessor and lessees have accepted the building pursuant to contract •executed contemporaneously herewith, * * * ” (Emphasis supplied.)
It is to be noted that the lease is not one of the lot, with improvements, but is restricted to the building, together with improvements “constructed in connection therewith and which are pertinent to the use and occupancy” thereof.
Thereafter, on January 3, 1966, Mr. Levy, lessor, entered into an exchange of various properties with Lebro Corporation, by the terms of which Lebro became owners of Lots 13 and 14, subject, of course, to the terms of the lease to the Messrs. Desser.
In February, 1966, John B. Levy sold Lots 11 and 12 to petitioners herein.
On February 11, 1966, Lebro Corporation granted to Dan A. Ritchey, Jr., and E. J. Chatelain, plaintiffs herein, “a servitude of passage and a utility easement” over:
“The northeasterly ten feet (10') of Lots 13 and 14 of Block 2 of West End Heights Subdivision * * * ”
Subsequently thereto, plaintiffs leased Lots 11 and 12 to one L. J. Millet and one James A. Ainsworth, who opened and are now operating the Pizza Inn on said property.
*737 Asserting their ownership of Lots 11 and 12 and of the servitude of 10 feet across the rear of Lots 13 and 14, plaintiffs brought this suit alleging that defendants, their agents and employees have unlawfully interfered with plaintiffs’ full and free use of said servitude by parking automobiles thereon, by attempting to have utility lines situated on servitude disconnected, and by beginning construction of a fence on the north side of Lot 13.
Claiming irreparable injury, plaintiffs pe-tioned for a temporary restraining order (which was granted by the district court) and a preliminary and permanent injunction.
After receiving evidence and hearing testimony on the rule nisi relating to the preliminary injunction, the trial court gave judgment in favor of defendants dissolving the temporary restraining order together with judgment against plaintiffs in the sum of $500.00 as damages for its improvident issuance. In addition, the court denied the preliminary injunction and further ordered the inscription of the servitude granted by Lebro Corporation erased from the records of the office of the Clerk of Court as constituting a slander on the title of the property of defendant.
From this multiple decree, plaintiffs perfected a suspensive appeal to this court.
Plaintiffs admit that if the lease from Levy to defendants had encompassed Lots 13 and 14 in their entirety, then Lebro Corporation would have no right to subsequently grant them a 10-foot servitude across the rear thereof. However, they contend that the lease only contemplated a lease of a building, with appurtenances, measuring 30 feet by 50 feet, leaving the rest of the lots free and clear of the operation of the lease and subject to Lebro’s right of alienation.
The defendants then counter with the introduction into evidence of a plat showing the building proposed to be erected on those lots. They assert that such plat shows the contemplation of the parties to be the in-elusion of the entire property. They further say that since the lease specifically mentioned a ‘contract executed contemporaneously’ therewith, that petitioners and Lebro Corporation had due and binding notice of such contemplated occupancy.
Plaintiffs reject this argument by citing the Registry of Instruments Law (L.R.S. 9:2721 et seq.) and stating that since this plan or plat was not recorded and made a matter of public record, it could not place them or Lebro on legal notice.
The trial court did not find it necessary to answer these various contentions. It answered the question by stating
“It is the opinion of this court that the lease from Levy to the Dessers intended that the Dessers be leased the strip of land in question, as the Court finds that this strip was included in the on site improvements which were constructed in connection with the construction of the building.”
Inasmuch as the contract of construction of the proposed building was specifically referred to in the lease between Levy and the defendants, we do not feel that the requirements of the plans for the location of the building were such ‘secret claims or equities’ as to make its recordation necessary under the provisions of L.R.S. 9:2721 et seq.
Moreover, we reiterate our holding in Mid-State Homes, Inc. v. Knapp, La. App., 156 So.2d 122, to the effect that a vague or ambiguous description in a deed may be clarified by extrinsic evidence. See also Burt v. Valois, La.App. 1 Cir., 144 So.2d 196, wherein it was held that if a description in a deed contains reference to a map, not attached to the deed, the description on the map would be controlling.
The plans for the building to be constructed show that a concrete pavement is to be laid from the west property line, fronting on University Avenue, a distance of 72 feet east to the front of the building. The build *738 ing is 35 feet deep and in back of the building is a concrete slab 10 feet deep. From there to the rear of the lots is a shell area 8 feet deep, making the total depth 125 feet. Pictures introduced in evidence show this 8-foot shelled area to be overgrown with high, thick vegetation on its rearmost line, with clumps of weeds sprouting in the middle of it almost to the edge of the rear 10-foot concrete slab.
Nowhere on the plat does it show any use to be made of this shelled area. The pictures show that the concrete slab to the rear of the building is more than adequate for the placement of boxes, crates, cases, garbage cans, etc. The excessive vegetation in the area shows that no real use is made of this area. A picture does show an automobile parked with its left wheels on the concrete slab and its right wheels about a foot and one-half from the slab onto the shell area. However, the same picture clearly shows that the automobile could have easily been parked wholly on the concrete.
Defendants make much of the fact that the contractor who built the building actually shelled this rearmost 8-foot strip. However, the contractor also shelled on the south side of the building along Louise Street a like strip 135 feet long. This obviously was done on the Louise Street public right-of-way and therefore was merely for the convenience of the contractor in his construction activities or for the convenience of the owner. It certainly was not constructed in connection with the building or pertinent to the use and occupancy thereof. As a matter of practicality, customers of the defendants may, and undoubtedly do, use this area for parking. However, this does not change the fact that non-customer members of the public may utilize this space without benefit to defendants or to the building.
In determining whether this lease encompassed the entirety of the lots, the intention of the parties thereto must be examined and, if possible, resolved. The first thing that strikes the court is the wording of the lease itself. It would have been a very simple matter for the parties to provide for the lease of Lots 13 and 14, West End Heights Subdivision, with improvements. If this had been done, there would be no litigation. However, the parties chose to lease a building to measure 50 feet by 30 feet, together with that portion of those lots (whether all or only part) necessary to accommodate ‘on site improvements to be constructed in connection therewith and which are pertinent to the use and occupancy of the said building’.
The building plan clearly shows an open area in the rear which is not pertinent to the use and occupancy of the building. No evidence whatsoever was adduced as to the necessity of this strip of ground to the functional operation of defendants’ business or its use or occupancy of the building. It could operate as it now does if this strip were not there.
It must be remembered that Mr. Levy was the owner of all of these lots. He must have known that ingress and egress to his inside lots at the rear thereof would be a desirable, if not a necessary adjunct to the sale or lease of these inside lots. We further feel that it was the intention of defendants in agreeing to the wording of the lease to recognize this and make provision for it in the proposed planning and locating of the building they were to rent from Mr. Levy.
We therefore must disagree with the trial judge and find that the parties meant exactly what they said in the preparation and consummation of the lease in question. We further find that the unpaved strip in the rear of Lots 13 and 14 was not an ‘on site improvement to be constructed in connection with the building or to be pertinent to the use and occupancy thereof. Hence, said strip was not subject to the lease between Levy and defendants and became available to Lebro Corporation to dispose of as it saw fit.
*739 We find that plaintiffs have made out the necessary prima facie for the issuance of a preliminary injunction. Of course, as pointed out by Judge Tate in his decision on the motion to dismiss, this is not a final judgment, the question of the permanent injunction is still pending before the courts.
In view of the above, the judgment of the Trial Court is hereby reversed and remanded for further proceedings not in conflict with the above.
Reversed and remanded.